**Isidro Sanchez GONZALES, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 1148–84.

Court of Criminal Appeals of Texas, En Banc.

July 2, 1986.

Peter A. Sakai (court appointed on appeal only), San Antonio, for appellant.

Sam D. Millsap, Jr., Dist. Atty. and Eduardo J. Garcia, Ronald E. Mendoza and Charles Estee, Asst. Dist. Attys., San Antonio, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appellant pled not guilty to an indictment for murder. V.T.C.A., Penal Code Sec. 19.02. A jury convicted appellant of murder, and assessed his punishment at 20 years imprisonment. He appealed from, and the San Antonio Court of Appeals reversed, that conviction. *Gonzales v. State*, 679 S.W.2d 638 (Tex.App.—4th Dist.1984). We granted the State's petition to review the correctness of the Court of Appeals' holding that the appellant was entitled to a charge on voluntary manslaughter.

On appeal, appellant claimed that he presented sufficient evidence to raise the issue that he acted under the immediate influence of sudden passion arising from an adequate cause. The majority opinion of the Court of Appeals agreed, and held that the appellant's testimony, alone, was sufficient to raise the issue and warrant an instruction on voluntary manslaughter. The State filed a petition for discretionary review and we granted that petition on two grounds: first, was the evidence sufficient to raise the issue that the appellant acted under the immediate influence of sudden passion; and second, did the Court of Appeals err by creating an automatic right to an instruction on voluntary manslaughter whenever self-defense is raised by the evidence. We agree with the State that the evidence was insufficient, and that no instruction on the law of voluntary manslaughter was necessary.

The testimony indicates that the appellant witnessed a confrontation in a nightclub between his friend and the victim. The appellant testified that he left the nightclub before the victim. Appellant went to his friend's car and waited. The victim came out of the club, and the appellant watched him walk to his car, open the trunk and get something out. At that time, without being certain that the victim retrieved a gun from his trunk, appellant picked up his friend's automatic pistol. Appellant left his friend's car and walked away. He said the victim came up behind

him and fired a shot. Appellant said he then turned around and fired the automatic pistol at the victim. According to appellant, the "gun just kept firing." The victim died as a result of the wounds.

This evidence clearly raised the issue that the appellant acted in self-defense. In his opening and closing arguments to the jury, defense counsel explained that "this was a case of self-defense," and that the victim was the passionately angry party involved. The appellant testified that "I fired in self-defense." The majority opinion of the Court of Appeals concluded that the appellant's theory from the outset was one of self-defense. The majority opinion also stated that the appellant was not at all upset over the words of the victim (in the victim's confrontation with appellant's friend). The only defensive issue raised by the evidence was that the appellant acted in self-defense.

The evidence at trial did not indicate that the appellant acted under the immediate influence of sudden passion arising from an adequate cause. At the most, appellant indicated that he was scared of the victim. Within the context of all of his testimony, this fear of the victim did not amount to the terror which would qualify as "sudden passion." As the dissenting opinion of the Court of Appeals stated:

"There is nothing in the record which indicates that appellant acted under the immediate influence of sudden passion. To the contrary, appellant anticipated the event and prepared himself to respond to the occasion ... the testimony of appellant ... demonstrates a person possessed of cool reflection throughout the entire incident."

*Gonzales*, supra, at 640. The evidence, including appellant's testimony, does not reflect "anger, rage, resentment or terror", V.T.C.A., Penal Code Sec. 19.04(c), of the appellant.

The majority opinion of the Court of Appeals erred when it incorrectly assumed that a defendant feels sudden passion (as defined in Sec. 19.04(c), supra), whenever a soon-to-be deceased victim provokes the defendant with a gun. In spite of the evidence to the contrary, the majority of the Court of Appeals held that:

"It would be difficult to imagine a specific event more likely to cause anger, rage, resentment or terror in a person of ordinary temper than to have someone aim a gun at you and fire."

*Gonzales*, supra, at 639. We will not imply material evidence into the record. It must be in the record for us to review when making a ruling. This Court, as well as the Courts of Appeals, have ruled in several cases, that when the evidence raises the issue of self-defense, a defendant is not entitled to a jury instruction on voluntary manslaughter unless there is evidence that the offense occurred under the influence of sudden passion arising from an adequate cause. *Luck v. State*, 588 S.W.2d 371 (Tex. Cr.App.1979); *Green v. State*, 658 S.W.2d 303 (Tex.App.—1st Dist.1983); *Martinez v. State*, 664 S.W.2d 822 (Tex.App.—3rd Dist. 1984); and *Wolford v. State*, 675 S.W.2d 530 (Tex.App.—14th Dist.1984).

 This Court has ruled that a mere claim of fear, as the appellant made in the instant case, does not establish the existence of sudden passion arising from an adequate cause. For a claim of fear to rise to the level of sudden passion, the defendant's mind must be rendered incapable of cool reflection. *Daniels v. State*, 645 S.W.2d 459 (Tex.Cr.App.1983). There was no testimony to indicate that the appellant became enraged, resentful or terrified immediately prior to the shooting. *Bradley v. State*, 688 S.W.2d 847 (Tex.Cr.App.1985). The appellant did not indicate through his testimony that he was emotionally aroused at the time of the shooting, and gave no cause for being aroused. *Stevens v. State*, 671 S.W.2d 517 (Tex.Cr.App.1984). The appellant's testimony showed that throughout his confrontation with the deceased he stayed cool and maintained his composure. The appellant's mental state did not call for an instruction on voluntary manslaughter. *Moore v. State*, 694 S.W.2d 528 (Tex.Cr. App.1985). The appellant's claim that he was scared of the deceased was insufficient

to raise the issue that he was acting under the immediate influence of sudden passion arising from an adequate cause. The Court of Appeals erred when it held that the appellant was entitled to a jury instruction on voluntary manslaughter.

■ In its second ground of review, the State accuses the Court of Appeals of creating an automatic right to a jury instruction on voluntary manslaughter whenever the issue of self-defense is raised. We disagree with the broad interpretation of the language used by the majority of the Court of Appeals. We overrule the majority's presumption that evidence of a defendant's sudden passion always exists when a victim shoots at a defendant with a gun.

We reverse the decision of the Court of Appeals, and remand this cause for the court to consider the appellant's other grounds of error.

CAMPBELL, J., concurs in the result.

ONION, P.J., not participating.

CLINTON, Judge, dissenting.

Again the Court is confronted with the question of when evidence in a murder prosecution sufficient to entitle an accused to an instruction on the issue of selfdefense will also raise the issue of whether he may also have acted "under the immediate influence of sudden passion arising from an adequate cause." V.T.C.A. Penal Code, § 19.04. Today the majority finds that despite the fact that the evidence raised the issue of selfdefense in this cause, voluntary manslaughter was not raised because "[t]he appellant's testimony showed that throughout his confrontation with the deceased he stayed cool and maintained his composure." At p. 357. Among the cases relied on by the majority in support of this finding is *Daniels v. State*, 645 S.W.2d 459 (Tex.Cr.App.1983). Because I feel that the Court's opinion in *Daniels* has been misconstrued, not just by the majority in this cause, but also by various courts of appeals, I write.

On direct examination appellant testified that, apparently sensing trouble brewing between his companion, Elias Maldonado, and the deceased, he left the club to wait in Maldonado's car:

"A. As I was getting in the car, this Garcia [deceased], I didn't know he was behind me, so as I was getting in the car, he kind of like—because he's kind of a little bit far, and he said he'd just wait there, 'You so and so.'

Q. Not 'so and so.' 'You'—what?

A. 'Motherfucker,' something like that.

Q. What did you do?

A. Well, I kept my eye on him. I got in the car, you know, and so I seen him going to the trunk, and I remember about Elias, he had a gun, and he had shown it to me before. I got the gun. I got out of the car.

Q. Did you see Mr. Garcia do something?

A. Yes sir. He got something out of the trunk.

Q. Did you see what it was that he got out of the trunk?

A. Yes, sir.

Q. What was it?

A. A gun.

Q. What did you do then?

A. I got out of the car and started walking toward like across the street, and he hollered at me.

Q. What did he holler?

A. I don't remember.

Q. Were you scared?

A. Yes, sir, because I knew he was getting something, you know, and that's why I was fixing to leave. And when he hollered at me, I seen him raise up his hand and fired, and I fired right back.

Q. Do you know how many times you fired?

A. No, sir. I just—that gun, I fired it just, you know, like an automatic or something, which kept on firing.

Q. Where were you going when you left the car?

A. I was going to go to my house, because Elias hadn't come out yet.

Q. Were you scared?

A. Yes, sir."

The majority finds that, notwithstanding appellant's acknowledgment that he was "scared," his testimony somehow indicates he acted coolly in spite of his fear. I cannot agree.

It is of course now axiomatic that a charge on voluntary manslaughter is mandatory only when there is evidence that the defendant acted under the immediate influence of sudden passion arising from an adequate cause. *Hobson v. State*, 644 S.W.2d 473 (Tex.Cr.App.1983). It is equally well established that where the evidence does raise the question whether the defendant acted under the immediate influence of sudden passion arising from an adequate cause, if the charge is properly requested, it must be submitted to the jury. *Medlock v. State*, 591 S.W.2d 485 (Tex.Cr.App.1979). Unfortunately, neither of these converse propositions provides a framework for determining *when* the evidence may be said to have raised the issue.

Section 19.04, supra, defines voluntary manslaughter thus:

"(a) A person commits an offense if he causes the death of an individual under circumstances that would constitute murder under Section 19.02 of this code, except that he caused the death under the immediate influence of sudden passion arising from an adequate cause.

(b) 'Sudden passion' means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

(c) 'Adequate cause' means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection."

In construing this statute the Court takes guidance from cases decided under former manslaughter statutes. *McCartney v. State*, 542 S.W.2d 156, 160 (Tex.Cr.App. 1976).

In *Maria v. State*, 28 Tex. 698, 711 (1866) it was observed:

"To reduce the killing from murder to manslaughter, two things must concur: there must have been provocation legally sufficient to produce passion; and such passion *must in fact have been produced*, which rendered the party, while under its influence, incapable of cool reflection, depriving her for a time of the power to comprehend the consequences of the act she was about committing." [1]

Fifty five years later, in *Lewis v. State*, 89 Tex.Cr.R. 345, 231 S.W. 113 (1921), this Court reasoned:

"The jury evidently rejected appellant's testimony, in which he claims that deceased shot at him before he killed deceased. Having found against appellant on the issue of self-defense, they still had a right to believe that deceased and his son made an assault on appellant, and that the three of them became engaged in a fight and struggle, and from this alone, or in connection with previous abuse and assault with the monkey wrench, appellant's mind became so inflamed from anger, rage, resentment, or terror as to render him incapable of cool

---

1. Prior to Acts 1913, 33rd Leg., p. 238, ch. 116, which dispensed with degrees of murder, a killing under provocation that did not amount to adequate cause was nonetheless considered to be perpetrated without "the deliberate design necessary to constitute express malice," 28 Tex. at 711, and hence to amount to no more than second degree murder. Also considered second degree murder was a jury finding that there was provocative conduct amounting to adequate cause, but that the defendant, though actually provoked to some extent, nevertheless retained his capacity for cool reflection. *Fendrick v.* *State*, 39 Tex.Cr.R. 147, 45 S.W. 589 (1898). Since 1913 there has been no such middle ground. An intentional killing committed under the influence of sudden passion for which there was no adequate cause is simply murder, under V.T.C.A. Penal Code, § 19.02; likewise a killing under circumstances justifying a finding of adequate cause will still amount to murder if the jury finds the defendant did not actually succumb to sudden passion.

(All emphasis supplied by the writer of this opinion.)

reflection, *and that* the facts and circumstances were sufficient to produce such a state of mind in a person of ordinary temper."

*Id.*, at 115. Because "Section 19.04 is basically the 1856 definition of (voluntary) manslaughter, without, however, that first code's enumeration of what was and was not adequate cause[,]" V.T.C.A. Penal Code, § 19.05, Practice Commentary, it is safe to assume that the above pronouncements apply to the current statute.

Thus it may be said that before a charge on voluntary manslaughter will be required there must be evidence tending to establish two distinct occurrences. First there must be evidence of some conduct of the deceased or another acting with him amounting to legally sufficient provocation under § 19.04(c), supra; that is, some conduct adequate to "produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." It will be observed that there are really two determinations to be made about this first occurrence. There must first be found evidence of conduct by the deceased which was in fact to some extent provocative.[2] If such evidence comes into the case, from any source, including but certainly not limited to the defendant's own testimony, *Medlock v. State*, supra, then I submit that the issue should in almost every instance be submitted to the jury for its evaluation of whether that provocative conduct was an "adequate cause," which is to say, "sufficient to render the mind [of a person of ordinary temper] incapable of cool reflection." [3]

The second occurrence which must be raised is that the defendant *was in fact provoked;* that is, regardless of whether the cause was "adequate," which is a discrete inquiry better left to the jury to resolve, there must be evidence that the defendant killed under a state of mind, be it "anger, rage, resentment, or terror," which *indeed* rendered him incapable of cool reflection.[4] In short, there must be evidence of "sudden passion," which is generally said to be manifested by "an excited and agitated mind at the time of the killing caused by an act of the deceased." *Elsmore v. State*, 132 Tex.Cr.R. 261, 104 S.W.2d 493, 495 (1937). Of course, absent direct testimony from the mouth of the defendant himself that he was enraged, resentful or terrified, such a state of mind, as with any other, must be proven circumstantially. Thus, evidence of some particularly grievous provocation by the deceased, besides tending strongly to establish adequate cause, has also been found, under the circumstances of a particular case, to serve as evidence that the defendant was in fact provoked. See, e.g., *Steen v. State*, 88 Tex.Cr.R. 256, 225 S.W. 529 (1920).[5]

---

**2.** Since sudden passion must not be "solely the result of former provocation[,]" § 19.04(b), supra, some provocative conduct must occur at the time of the offense. Of course, this does not render inadmissible evidence of earlier troubles which may place the provocation occurring at the time of the offense into a sensible context; indeed, such evidence may well establish that the conduct by the deceased at the time of the offense, relatively innocuous on its face, really *did* amount to provocation, when viewed in light of earlier events. In fact, such evidence *must* be admitted, under V.T.C.A. Penal Code § 19.06.

**3.** As noted *ante,* prior codes defined many types of conduct which were deemed to be or not to be adequate cause as a matter of law. Accordingly, juries were often instructed that a particular act of the deceased would, if committed, constitute legal provocation and were thus left only with the necessity of determining whether

the deceased did indeed commit the act which amounted to legal provocation, and if so, whether or not the defendant was indeed provoked. See, e.g., *Stovall v. State*, 95 Tex.Cr.R. 189, 253 S.W. 526 (1923). The statutory enumeration was not, however, exclusive. *Lewis v. State*, supra.

**4.** In fact, prior statutes required that "[i]n order to reduce a voluntary homicide to the grade of manslaughter, it is necessary not only that adequate cause existed to produce the state of mind ... but also that such state of mind did actually exist at the time of the commission of the offense." P.C., Art. 1253 (1925); P.C., Art. 1137 (1911); P.C., Art. 707 (1895); P.C., Art. 602 (1879).

**5.** In *Steen,* supra, the defendant testified, and denied having fired his pistol with any intent whatsoever to kill. He also testified that at the

It seems to me, then, that what the evidence must raise, in order to necessitate the giving of an instruction on voluntary manslaughter, is: first, that there was some provocative conduct of the deceased, or someone acting with him, toward the defendant at the time of the offense; and second, that the provocation did in fact render the defendant incapable of cool reflection upon his conduct. If these are raised, the issue should be submitted to the jury for its determination of whether, as matters of fact, the provocative conduct did occur, the defendant was in fact provoked, and the provocation was adequate to render the mind of a person of ordinary temper incapable of cool reflection. If the jury finds there was no provocative conduct, or at least none occurring at the time of the offense, then of course there is no finding of cause at all, much less "adequate cause." Alternatively, the jury could find there was provocative conduct, even adequate to render an ordinary man incapable of cool reflection, but that nonetheless, the defendant himself acted coolly and deliberately. Finally, it could find there was provocative conduct, that the defendant was in fact provoked, but that the provocation was not such as would render a man of ordinary temper incapable of cool reflection. Any one of these findings of fact would justify the jury in declining to convict of the lesser offense of voluntary manslaughter. But so long as there is evidence from any source, whether or not it is impeached, contested or simply of dubious credibility, that the deceased acted provocatively, and from which it can at least be inferred, absent direct testimony from the defendant, that he was in fact provoked, i.e., he acted "under the influence of sudden passion," the issue has been *raised* and must be submitted to the jury.

The majority in the instant case somehow divines from appellant's testimony that "throughout his confrontation with the deceased he stayed cool and maintained his composure." At p. 357. Presumably by this the majority means that there is no showing of "sudden passion;" no showing that appellant was in fact provoked. Elsewhere the majority declares that it will "not imply material evidence into the record." At p. 357. It strikes me that what the majority *is* willing to do is to ignore material evidence that *is* in the record, from which it may readily be inferred that appellant was in fact acting under the influence of sudden passion. But in this, the majority preempts what is patently a function of the jury.

Time after time this Court has found voluntary manslaughter to have been raised when defensive evidence showed some immediately provocative conduct on the part of the deceased and the defendant testified to the effect that he was "scared" or "afraid." See *Steen v. State,* supra; *Monroe v. State,* 501 S.W.2d 639 (Tex.Cr. App.1973); *Mays v. State,* 513 S.W.2d 846 (Tex.Cr.App.1974); *Ray v. State,* 515 S.W.2d 664 (Tex.Cr.App.1974); *Medlock v. State,* supra. Then, in *Luck v. State,* 588 S.W.2d 371, at 374–375 (Tex.Cr.App.1979), the Court observed:

> "[W]hen the evidence only raises the issue of self-defense, a defendant is not entitled to a charge on voluntary manslaughter unless there is evidence that the offense occurred under the influence of sudden passion arising from an adequate cause. See, *Jones v. State,* 504 S.W.2d 906, Tex.Cr.App.; *Foster v. State,* 493 S.W.2d 812, Tex.Cr.App."

*Id.,* at 375. The opinion of the Court does not specify in what respect the evidence

time of the shooting he was "greatly excited and scared." The Court held that the jury could have rejected the defendant's disclaimer of intent to kill, but found under the circumstances that when he did kill the deceased, he did so not out of malice, but from a sudden passion. Opined the Court:

> "When a killing takes place, and there are circumstances in evidence from which such

adequate cause and *passion might be inferred,* the duty to submit the issue to the jury is plain. Whether said mental condition did so exist, and whether the causes in evidence were such as would be calculated to produce such passion in the mind of an ordinary person, are questions of fact for the jury, and are not to be decided by the court."

*Id.,* 104 S.W.2d at 531.

was found lacking to raise the issue, merely concluding that "[w]hile the initial attack by the deceased raised the issue of self-defense, there was no showing that appellant stabbed and shot the deceased under circumstances which would constitute the offense of voluntary manslaughter." The only distinction between *Luck* and the above cases is that in *Luck* the defendant did not testify, and hence could not establish by his own testimony that he was "scared." Noting this distinction, Judge Phillips in dissent pointed out that "[t]his Court long ago held that it is not necessary that the accused testify to the passion that is required to establish the offense, so long as the facts in evidence raise the issue." *Id.*, at 378.

Thus the Court seems to have established, somewhat anomalously in my view, that at least when the evidence raises self-defense, before it may be said that it also raises voluntary manslaughter, there must be some additional showing, apart from the circumstances themselves, that appellant was in fact enraged, resentful or terrified. Presumably this evidence would not have to come from the defendant himself; another witness might give a "shorthand rendition" of what the defendant's state of mind seemed to be at the time. See, e.g., *Jones v. State,* 47 Tex.Cr.R. 515, 85 S.W. 5 (1905).

Nevertheless, since appellant testified in the instant cause that he was "scared" when he acted, it would seem he has satisfied the requirement of *Luck.* The majority finds, however, that his claim of fear was not shown to have risen to the level of sudden passion; that indeed his testimony somehow indicates otherwise. For this proposition it relies on *Daniels v. State,* supra. Thus the majority builds upon the *Luck* anomaly.

In *Daniels,* supra, the defendant acknowledged from the witness stand that when he shot the deceased, he was afraid the deceased was going to kill him. On recross examination, however, he demonstrated that such fear did not in fact render him incapable of cool reflection, when he testified:

"Q. Mr. Daniels, at the time you shot [the deceased], you knew you had to kill him, didn't you?

A. Did I know? If not it would have been me.

\* \* \* \* \* \*

Q. It wasn't like you couldn't control yourself, you were in full control and you knew you had to do what you did?

A. Yes."

645 S.W.2d at 460. The Court effectively held that because the defendant himself testified that whatever fear he experienced did not impair his capacity for cool reflection, "sudden passion" was not shown, and hence the issue of voluntary manslaughter was foreclosed. Clearly there was evidence raising provocative conduct on the part of the deceased, such that a jury determination as to the adequacy of the provocation would be called for; provided that from his testimony that he was afraid, taken with the provocative conduct itself, it could be inferred that Daniels was in fact provoked. By his further testimony, however, he eliminated whatever inference may otherwise have been possible that in fact he *was* provoked. Thus, though provocative conduct was shown, from which adequate cause could be inferred, actual "sudden passion" was taken out of the case, and therefore voluntary manslaughter was not raised.

The same cannot be said here. The majority maintains that by his testimony appellant demonstrates he acted coolly and with composure. Everything that bears on the question of appellant's state of mind at the time of the offense has been set out *ante.* A stranger with whom his friend only moments before had a verbal altercation shoots at him on the street outside a bar. In fear, he retaliates. As observed by Judge Dial below, it would indeed be difficult to imagine a specific event more

likely to cause anger, rage, resentment or terror in a person of ordinary temper than to have a gun aimed and fired in one's direction. In view of this provocative conduct, which a jury could easily find amounted to adequate cause, and appellant's assertion that he was in fact "scared," a jury would be fully entitled to infer "fear which rises to the level of terror," i.e., "sudden passion" on appellant's part. There is nothing in appellant's further testimony to negate that inference.

After *Luck* voluntary manslaughter cannot be raised merely by circumstances in evidence which could give rise to an inference of sudden passion—at least not if selfdefense is also in the case. After today it will not even be enough for a defendant to introduce evidence he was "scared" or afraid, under circumstances giving rise to such an inference. Apparently there must now be *direct* evidence that the defendant was in fact enraged, resentful or terrified before it will be said that voluntary manslaughter has been raised. Surely *Daniels*, supra, does not support such a requirement.

The State complains that the court of appeals has created an automatic right to a voluntary manslaughter instruction whenever the issue of self-defense is raised. *Daniels*, supra, belies this contention. Nevertheless, it is true, as was long ago observed, that "where the case becomes involved from the issues raised, and it is claimed the killing resulted from a fight, and the facts of its inception or progress become controverted issues raising the question of self-defense, it is a rare instance where the issue of manslaughter does not also become pertinent." *Lewis v. State*, supra, 231 S.W.2d at 116.

I would affirm the judgment of the court of appeals. Because the Court does not, I respectfully dissent.

TEAGUE and MILLER, JJ., join.

ONION, P.J., not participating.