**Miguel CORRAL, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 08–94–00003–CR.**

Court of Appeals of Texas,
El Paso.

June 8, 1995.

M. Clara Hernandez, El Paso County Public Defender, El Paso, for appellant.

Jaime E. Esparza, Dist. Atty., El Paso, for State.

## OPINION

CHEW, Justice.

This is an appeal from a conviction for the offense of murder. A jury convicted Appellant and sentenced him to 80 years' confinement in the Texas Department of Corrections—Institutional Division. We affirm.

On the afternoon of March 10, 1993, Omar Lopez, Ruben Diaz, and Jose Garcia, all Socorro High School students, were sitting and talking atop a wall in their neighborhood. A grey car passed by and its occupants "threw" gang signs at the three boys. Ruben Diaz ("Ruben") testified that the incident concerned them, so they decided to walk toward their homes. Ruben denied that any of them did anything to provoke the people in the car. As the boys walked down Kendrick Circle, approximately twenty minutes later, the grey car passed by again. The car continued up the street and stopped in front of Gerardo "Jerry" Mendoza ("Jerry") and his friend, "George." Jerry testified that he recognized the driver, but he did not know the passengers. According to Jerry, the front seat passenger pointed a gun at George and him, but did not shoot because the driver was a friend of George's. The driver made a U-turn and headed back toward the three boys. Both Ruben and Jerry testified that Jerry tried to signal the three boys that the people in the car had a gun. As the car pulled up to the boys, the front passenger fired three shots at them. One shot hit and killed Omar Lopez. Both Jerry and Ruben identified Appellant as the front seat passenger who shot Omar. Jerry further identified Appellant as the person who had pointed the gun at him immediately before the killing.

Mike Mossman ("Mike"), another Socorro High School student, testified that he was walking on the opposite side of Kendrick Circle at the time of the shooting. Mike testified that one of the three boys threw a rock at the grey car as it went down Kendrick Circle the first time. He did not know which of the boys threw the rock. Ruben denied that anyone threw a rock at the grey car. Jerry did not see anyone throw a rock. Mike saw the car continue down the street, stop in front of Jerry and George, and then turn back around toward the three boys.

Mike testified that the front passenger fired three shots at the boys as the car passed. Mike also identified Appellant as the one who fired the shots.

### The Photograph

In his first point of error, appellant complains of the admission of an autopsy photograph which he asserts is irrelevant and unfairly prejudicial. The State offered five 5 × 7 color autopsy photographs of the victim and appellant objected to two of the photos (only one is complained of here—State's Exhibit 37). The trial court overruled the objections.

The admissibility of gruesome photographs in a trial is governed by Rule 403 of the Texas Criminal Rules of Evidence. *Long v. State,* 823 S.W.2d 259 (Tex.Crim.App. 1991). Rule 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of [1] unfair prejudice, [2] confusion of the issues, or [3] misleading the jury, or [4] by considerations of undue delay, or [5] needless presentation of cumulative evidence." TEX.R.CRIM.EVID. 403. Upon sufficient objection to invoke Rule 403, the trial court must first consider whether the photograph is relevant as the rule only applies to relevant evidence. *Long,* 823 S.W.2d at 271. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R.CRIM.EVID. 401.

After a determination of relevance, the trial court then has the duty to weigh the probative value or need for the evidence against the prejudicial danger or harm that is likely to result from its admission, and strike a balance. *Montgomery v. State,* 810 S.W.2d 372, 388 (Tex.Crim.App.1990). The first step requires a measurement of the probative value of the offered evidence. This is done with a view towards the importance for which the evidence is offered, the availability of other means of proof, its inherent or relative probativeness, and other factors

appropriate and unique to the circumstances of each case. *Long,* 823 S.W.2d at 272.

▉ The next step involves the measurement of prejudicial danger or the harm likely to result from the admission of the evidence. In weighing the prejudicial effect of autopsy photographs, some of the factors to be considered are: number of exhibits offered, their gruesomeness, their detail, their size, whether they are black and white or color, whether they are close-up, whether the body is naked or clothed. *Long,* 823 S.W.2d at 272. Moreover, so long as a post-autopsy photo aids the jury in understanding the injury and does not emphasize mutilation caused by the autopsy, the photo is admissible notwithstanding the fact that it was taken after the autopsy. *Burdine v. State,* 719 S.W.2d 309, 316 (Tex.Crim.App.1986); *Harris v. State,* 661 S.W.2d 106, 107 (Tex.Crim. App.1983).

▉ The standard of review with regard to the balance struck is whether the trial court abused its discretion. So long as the trial court operates with the boundaries of its discretion, the appellate courts should not disturb its decision, whatever it might be. *Templin v. State,* 711 S.W.2d 30 (Tex.Crim. App.1986); *Jannise v. State,* 789 S.W.2d 623 (Tex.App.—Beaumont 1990, pet. ref'd).

▉ In this case, the trial court admitted State's Exhibit 37, a 5 × 7 color autopsy photograph, taken at close range, showing a two-inch incision under the left arm pit of the victim, slightly gaping, and exposing the bullet in the fatty tissue just beneath the skin. This incision is through the bruised skin depicted in one of the other four photographs (Exhibit 36) admitted without objection. The other three photographs show the victim's face and the bullet entrance wound at close and wide range.

The photographs were introduced during the testimony of the medical examiner and directly related to his testimony on the cause of death. The medical examiner testified that the bullet entered the victim's right chest, passed through the lungs and two major blood vessels and then lodged right under the skin under the left arm pit. Exhibit 36 showed a bruised area under the left arm pit where the medical examiner testified that the bullet could be felt. Exhibit 37 depicts the incision made through the bruised skin to expose and remove the bullet. The appellant argued below and here that because the incision was made by the medical examiner and not by any action of the appellant, it is not relevant. The trial court overruled the objection and held that the photograph was relevant. We agree with the trial court. The photograph is direct evidence of the fact that the victim's death was caused by a bullet wound. It is clearly relevant as it logically tends to make a proposition more or less likely, that the victim's death was caused by a bullet wound, and that proposition is of consequence to the central issue in this trial.

▉ The appellant next sufficiently raised a Rule 403 objection and the trial court, though doubting the applicability of *Montgomery,* nevertheless, but properly, engaged in a balancing process and provided a reasoned explanation for his determination that the photograph had probative value and was logically tied to the other photographs to accurately determine the nature and extent of the wound. The trial court then identified the prejudicial danger and held that the photograph was "not a real gruesome photograph." We agree and further note, from our own examination of the photographs, that they were limited in number, they were relatively small in size, they depicted very little blood or gore, and, in our opinion, have minimal prejudicial effect.[1]

Viewing the rule, which requires that the unfair prejudice "substantially" outweigh the probative value, and trial court's record of his balancing process, we find that the trial court correctly assessed the possible effects of the offered evidence and properly exercised his discretion. Point of Error One is therefore overruled.

---

1. This Court is not unmindful of the probable effect that the autopsy photographs may have on the victim's survivors. While courts should be sensitive to the potential for autopsy photos to make any prosecuted homicide a twice-lived tragedy for the victim's survivors, their probative value generally justifies their admission into evidence.

### Voluntary Manslaughter

In Point of Error Two, Appellant contends that the trial court erred in failing to charge the jury on voluntary manslaughter.[2] In Point of Error Three, Appellant alleges that the evidence is insufficient to support his conviction because the State failed to negate the issue of sudden passion. We will discuss both points together.

#### A. Failure to charge the jury

 Voluntary manslaughter cannot be considered a lesser-included offense of murder unless there is some evidence of sudden passion in the case. *Acosta v. State*, 742 S.W.2d 287, 288 (Tex.Crim.App.1986); *Bradley v. State*, 688 S.W.2d 847, 851 (Tex.Crim. App.1985). A defendant is not entitled to a charge on voluntary manslaughter unless there is evidence that the killing occurred under the immediate influence of sudden passion arising from an adequate cause. *Acosta*, 742 S.W.2d at 288; *Daniels v. State*, 645 S.W.2d 459, 460 (Tex.Crim.App.1983); *Gonzales v. State*, 717 S.W.2d 355, 357 (Tex.Crim. App.1986). Not all testimony of anger or fear entitles a defendant to a voluntary manslaughter charge. *Gonzales*, 717 S.W.2d at 357; *Nance v. State*, 807 S.W.2d 855, 860 (Tex.App.—Corpus Christi 1991, pet. ref'd). For a claim of fear or anger to rise to the level of sudden passion, the defendant's mind must be rendered incapable of cool reflection. See *Gonzales*, 717 S.W.2d at 357.

 An instruction on voluntary manslaughter is properly refused where there is no evidence of adequate cause. *Marras v. State*, 741 S.W.2d 395, 405 (Tex.Crim.App. 1987). Appellant relies on evidence that the three boys threw a rock at the car in which he was riding coupled with an exchange of "gang signs" to support his contention that he is entitled to a voluntary manslaughter charge. The murderous acts of one not of ordinary temper or whose response to the alleged cause is not objectively common in the ordinary, reasonable person does not,

however, support a voluntary manslaughter issue. *Lopez v. State*, 716 S.W.2d 127, 129 (Tex.App.—El Paso 1986, pet. ref'd). In other words, voluntary manslaughter is not available to one whose actual emotional responses are aberrational in this society. *Id.* Throwing a rock and making gang signs are not adequate in this society to justify a killing. Without legally adequate cause, no amount of subjective passion will justify submission of voluntary manslaughter. *Provost v. State*, 514 S.W.2d 269 (Tex.Crim.App. 1974). After viewing the evidence of the alleged provocation in the case objectively, we conclude there is no evidence of adequate cause to warrant a charge on voluntary manslaughter. See *Marras*, 741 S.W.2d at 406; *Lopez*, 716 S.W.2d at 129.

 Even if the rock throwing and gang signs gave adequate cause, there is no evidence in the record that Appellant was actually angered or placed in fear by the boys' actions. Thus, there is no evidence that Appellant acted in sudden passion. In the absence of some showing that Appellant acted in sudden passion, the evidence does not raise the issue of voluntary manslaughter. *Marras*, 741 S.W.2d at 405; *Ojeda v. State*, 712 S.W.2d 742, 744 (Tex.Crim.App.1986). Because the evidence in this case did not raise the issue of voluntary manslaughter, the trial court properly refused to charge the jury on the issue. *Martinez v. State*, 664 S.W.2d 822, 826 (Tex.App.—Austin 1984, no pet.).

#### B. Sufficiency of the evidence to negate sudden passion

 When the evidence raises sudden passion, the absence of the influence of sudden passion becomes an element of murder that the State must prove beyond a reasonable doubt. *Ruiz v. State*, 753 S.W.2d 681, 683 (Tex.Crim.App.1988); *Bradley v. State*, 688 S.W.2d at 851. When the evidence does not raise the issue of sudden passion, however, the State is not required to disprove the

2. As of September 1, 1994, voluntary manslaughter is no longer a separate offense under the Texas Penal Code. Instead, it is merely a punishment issue in a murder case. See TEX.PENAL CODE ANN. § 19.02(d) (Vernon 1994). Both the offense and the trial occurred before the effective date of the change, thus, pursuant to the prior version of the law, voluntary manslaughter was considered a lesser included offense to murder at this trial.

nonexistent issue. *Martinez*, 664 S.W.2d at 826. In this case, the evidence did not raise the issue of sudden passion. There was no need for the State to negate the issue. Accordingly, we overrule Points of Error Two and Three.

### Improper Jury Argument

In his fourth point of error, Appellant alleges that the trial court committed reversible error by overruling Appellant's objection to the Prosecutor's statement that "[Appellant] and his buddies were looking for someone to shoot that day." Appellant alleges that the statement injected a new and harmful fact that was not supported by the evidence.

Proper jury argument consists of: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement. *Borjan v. State*, 787 S.W.2d 53, 55 (Tex.Crim.App. 1990); *Alejandro v. State*, 493 S.W.2d 230, 231–32 (Tex.Crim.App.1973). In this case, there was evidence that Appellant had pointed a gun at two other people immediately before he shot the victim, but opted not to shoot. It is reasonable to infer from that evidence that Appellant was out to shoot someone on the day in question. The prosecutor's statement was therefore a reasonable inference from the evidence in the case. Accordingly, we overrule Point of Error Four.

### Motion for New Trial

Appellant alleges that the jury improperly considered his prior conviction for burglary of a habitation during their punishment deliberations. Appellant obtained affidavits from two jurors stating that the jury had considered the prior conviction in determining sentencing. Appellant filed a motion for new trial on the ground of juror misconduct, based in part on the allegedly improper consideration the jury gave to the burglary conviction. Appellant argued that the jury had disregarded the charge, which admon-

---

**3.** The current amendments did not become effective until September 1, 1993. The offense in question occurred March 10, 1993, so the prior version of the statute applies. **See** TEX.CODE CRIM.

ished them not to "consider any *offense* other than the offense for which you have found the defendant guilty in determining his punishment." [Emphasis added]. Appellant asserted that the prior conviction is an "offense" which the jury could not consider pursuant to the charge. The trial court refused to hear evidence on that part of Appellant's motion, finding that despite what Appellant's interpretation of the term *offense* as used in the charge might be, the applicable law allowed the jury to consider the prior burglary *conviction*. The version of TEX. CODE CRIM.PROC.ANN. art. 37.07, § 3(a) applicable to this case reads:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may, as permitted by the Rules of Evidence, be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including the prior criminal record of the defendant, his general reputation and his character. The term prior criminal record means a final conviction in a court of record, or a probated or suspended sentence that has occurred prior to trial, or any final conviction material to the offense charged.

TEX.CODE CRIM.PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1991).[3] Thus, the trial court reasoned that the juror's affidavits failed to establish juror misconduct or other error as a matter of law.

Appellant requests that this Court remand the issue to the trial court for an evidentiary hearing; however, we agree with the trial court's analysis. Accordingly, we find that as a matter of law, the juror's affidavits do not show juror misconduct or error. The affidavits merely state that the jurors considered issues they were legally entitled to consider. See *Grunsfeld v. State*, 843 S.W.2d 521 (Tex.Crim.App.1992) (interpreting then effective version of TEX.CODE CRIM.PROC ANN. art. 37.07, § 3(a) [Vernon Supp.1991] ). Appellant's assertions, even if true, fail to allege juror misconduct or other error as a matter of law. No evidentiary hearing is necessary.

PROC.ANN. art. 37.07, § 3(a) (Vernon Supp.1995) (historical and statutory notes regarding 1993 amendments).

Accordingly, we overrule Point of Error Five.

### Hearsay Testimony

In his final point of error, Appellant contends the trial court erred in failing to declare a mistrial because of the testimony of Deputy Sheriff Daniel Diaz. Diaz arrested Appellant at his home late on the night of the killing. When the prosecutor asked Diaz why he went to Appellant's home without an arrest warrant, he replied: "Because of the judge not being available, and plus, we got information from [Appellant's] friends." Appellant objected on the grounds of hearsay and confrontation. The trial court sustained the objection and instructed the jury to disregard the deputy's answer. The trial court denied Appellant's motion for mistrial. Without going into the merits of Appellant's objection, the trial court cured any error with its prompt action in sustaining the objection and instructing the jury to disregard. *Thompson v. State,* 612 S.W.2d 925, 928 (Tex. Crim.App.1981). Further, the deputy's statement is not the sort of evidence calculated to inflame the minds of the jury so that the court's instruction cannot cure it. See id. Sustaining the objection and instructing the jury to disregard the comment cured any error. Accordingly, we overrule Point of Error Six.

### Conclusion

Having considered and overruled all of Appellant's points of error, we affirm the judgment of the trial court.