Court of Appeals
Fourth Court of Appeals District of Texas
San Antonio


# MEMORANDUM OPINION

No. 04-09-00590-CR

Gregorio **ONTIVEROS**, III,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 341st Judicial District Court, Webb County, Texas
Trial Court No. 2000-CRN-00338-D3
Honorable Elma T. Salinas-Ender, Judge Presiding

Opinion by:     Sandee Bryan Marion, Justice

Sitting:        Catherine Stone, Chief Justice
                Sandee Bryan Marion, Justice
                Steven C. Hilbig, Justice

Delivered and Filed: November 10, 2010

AFFIRMED

A jury found appellant, Gregorio Ontiveros, III, guilty of murder and assessed punishment at confinement for ninety years. We affirm.

## FACTUAL BACKGROUND

On June 14, 2000, appellant shot and killed his sister-in-law's former husband, Domingo Cortez, Jr. According to appellant's written statement to the police, appellant went to his sister-in-law's place of work, a Whataburger in Laredo, around 2:45 a.m. to ask her if appellant's

brother was working that night at the Hampton Inn. When he arrived at the Whataburger, appellant saw Cortez in the parking lot. He asked his sister-in-law if Cortez was bothering her, and she replied she was unaware Cortez was on the premises. Appellant stayed at the Whataburger for about twenty minutes, left to retrieve a gun, and then returned to find Cortez "just staring at [him], like a real bully." Appellant's sister-in-law bought appellant a burger, which he ate. Appellant then left the Whataburger again, only to discover one of his car's tires had been slashed. He fixed the slashed tire and left the parking lot around 4:00 a.m., telling his sister-in-law to page him if Cortez was there when she left work.

Appellant returned to the Whataburger about thirty minutes later. At that time, he saw his sister-in-law's car quickly leaving the parking lot and Cortez's car exiting the lot at the same time. At that point, Cortez saw appellant and started driving toward him. Appellant opened his car door and Cortez told him, "You are going to get fucked!" Appellant turned around and followed Cortez down the road, pulled up next to him, and asked him if he liked to slash tires. Cortez replied, "I am syndicate. I don't tear tires. I tear lives," and then he reached over "like to grab something." Appellant stated, "I got scared and feared for my life." Appellant then pulled the gun out and shot Cortez multiple times. After shooting Cortez, appellant drove to a friend's house, where he dropped off the gun. He then went to his mother's house to drop off his car, and his mother drove him home.

The court instructed the jury to consider self-defense during the guilt-innocence phase of the trial, and the jury found appellant guilty of murder. Appellant's request for a sudden passion instruction at the punishment phase was denied.

**DISCUSSION**

Appellant contends the trial court erred by failing to include an instruction regarding sudden passion in the jury charge at the punishment phase. During the punishment phase, a defendant may attempt to mitigate his punishment by raising the issue as to whether "he caused the death under the immediate influence of sudden passion arising from an adequate cause." TEX. PENAL CODE ANN. § 19.02(d) (West 2003). "Sudden passion" is "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2). "Adequate cause" is "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1).

Before a defendant is allowed a sudden passion instruction, there must be some evidence "that there was an adequate provocation, that a passion or an emotion such as fear, terror, anger, rage, or resentment existed, that the homicide occurred while the passion still existed and before there was reasonable opportunity for the passion to cool; and that there was a causal connection between the provocation, the passion, and the homicide." *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005). A "sudden passion charge should be given if there is some evidence to support it, even if that evidence is weak, impeached, contradicted, or unbelievable." *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). But the evidence "cannot be so weak, contested, or incredible that it could not support such a finding by a rational jury." *McKinney*, 179 S.W.3d at 569.

In his reply brief, appellant quotes, at length, the Court of Criminal Appeals' decision in *Trevino v. State* as support for his argument that he was entitled to the sudden passion

instruction. In that case, Trevino's wife angrily confronted him with a .38 caliber revolver, accused him of having other women's phone numbers in his pocket, and fired a shot at him, but missed. *Trevino*, 100 S.W.3d at 233. Trevino immediately shot back at his wife three times, killing her. *Id.* Afterwards, Trevino was "freaking out," scared, and panicked when police officers arrived. *Id.* He begged the officers to help his wife, then began staring out into space, looking shocked. *Id.* Based on those facts, the Court of Criminal Appeals found Trevino was entitled to a sudden passion instruction. *Id.* at 241.

In a subsequent decision, *McKinney v. State*, the Court of Criminal Appeals found no error in the trial court's denial of a sudden passion instruction. In that case, McKinney shot his son after his son yelled at him and pushed him during an argument. *McKinney*, 179 S.W.3d at 571. Distinguishing its decision from that in *Trevino*, the Court explained:

> In the instant case, [McKinney] was never approached by [the victim] with a gun. In fact, the only thing [the victim] did to [McKinney] was yell at him and push him. These actions do not rise to the level of adequate cause. There is no evidence that the verbal taunting and physical pushing by [the victim] produced a degree of anger, rage, resentment, or terror in [McKinney], sufficient to render his mind incapable of cool reflection.

*Id.* at 570. Also, the Court noted that McKinney had time to deliberate over his actions, sitting down at his desk between scuffles with his son before retrieving his pistol. *Id.* The Court quoted its prior decision in *Gonzales v. State*, in which it found "[Gonzales] did not act under the immediate influence of sudden passion since [he] 'anticipated the event and prepared himself to respond to the occasion . . . demonstrating a person possessed of cool reflection throughout the entire incident.'" *Id.* (quoting *Gonzales v. State*, 717 S.W.2d 355, 357 (Tex. Crim. App. 1986)).

Here, appellant contends Cortez's alleged slashing of appellant's tire and subsequent threat that appellant was "going to get fucked" were sufficient to establish adequate cause. But, according to appellant's own statement, he demonstrated calm and collectedness both before and

after the shooting. Appellant had already retrieved a gun, returned to the Whataburger, and eaten a burger before ever discovering the slashed tire, indicating he anticipated and prepared for a confrontation even before he was provoked. He also became aware of the slashed tire over an hour prior to the shooting and had time to fix the tire, leave the Whataburger, and then return again all before his verbal confrontation with Cortez. Appellant did not report feeling fear, terror, anger, rage, or resentment upon discovering the slashed tire, but even if he experienced these emotions, he had over an hour to cool off before he saw Cortez again. And, although Cortez approached appellant to tell him he was "going to get fucked," Cortez then drove away. Appellant made the effort to follow Cortez and confront him about the tire slashing, which confrontation ended in the shooting. For these reasons, we conclude appellant was not entitled to a sudden passion instruction; therefore, the trial court did not err in denying him the instruction.

## CONCLUSION

We overrule appellant's only issue on appeal and affirm the trial court's judgment.

Sandee Bryan Marion, Justice

DO NOT PUBLISH