EPPERSON 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-91-415-CR






JOE EPPERSON,



 APPELLANT



vs.






THE STATE OF TEXAS,




 APPELLEE

 




FROM THE DISTRICT COURT OF BASTROP COUNTY, 21ST JUDICIAL DISTRICT



NO. 7492, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING



 





 Appellant, Joe Epperson, was convicted of murder by intentionally and knowingly
causing the death of Lonnie Epperson, his half-brother. The jury sentenced appellant to eighty
years confinement. In two points of error, he contends that the trial court erred in failing to
submit to the jury instructions on either of the lesser included offenses of voluntary manslaughter
or involuntary manslaughter. We will affirm the judgment of conviction.



BACKGROUND



 Appellant was indicted for fatally shooting his half-brother Lonnie with a Derringer
pistol. Medical testimony established that Lonnie received two gunshot wounds. The first shot entered Lonnie's left forearm and abdomen, leaving him injured and disabled but still
mobile. The abdominal wound, if untreated, would have caused his death in approximately 

fifteen minutes. The second shot entered Lonnie's skull and brain at the left eye, causing
immediate death. The shooting occurred in Lonnie's motor home, which the two men were
sharing at the time. A Bexar County Deputy Sheriff found the body in a wooded area near San
Antonio known as the "killing fields," where the appellant had attempted to hide it. 

 The appellant's testimony was the only direct evidence of the events which
transpired. There were no other witnesses present. Two different versions of the shooting are
presented in this record. One version comes from the voluntary statement appellant gave to the
police after his arrest, which was played for the jury and admitted as an exhibit. The second
version comes from appellant's testimony at trial.



Appellant's Statement to the Police


 After his arrest, appellant consented to be interviewed by both Chief Investigator
Fred Pecenka, of Bastrop County, and Texas Ranger G. W. Hildebrand. Appellant's statement
was taped and transcribed. Appellant was properly informed of his rights, waived those rights,
and does not contest on appeal the admissibility of the statement. According to that statement,
on Friday, February 1, 1991, at 11:00 a.m., appellant came out of the bedroom to find Lonnie
drinking a beer. Lonnie "had" appellant make out checks to pay the bills. While doing so,
appellant asked Lonnie for some money to send to appellant's son, who was in jail. Lonnie
refused, and the two men argued. 

 Appellant claims that Lonnie went into his bedroom and returned with a .38
Derringer which he pointed at appellant. Appellant told Lonnie to put the gun away, "cause
somebody was gonna get hurt . . . either you're gonna get hurt, or either I'm gonna get hurt, or
we're both gonna get hurt, cause I, I said we're both f______ stubborn and you know I'm not
gonna, gonna bend." Appellant stated he planned simply to leave the premises until Lonnie said
that he was going to throw appellant and his "stuff" into the street and then cocked the pistol. 
Appellant claimed that he grabbed the gun when Lonnie cocked it, and they started wrestling;
Lonnie was still sitting in the recliner and Lonnie's position, plus appellant's weight and size,
gave appellant the advantage, so that appellant was able to turn the gun and push it up against
Lonnie before the gun "went off." Appellant's statement indicates that the gun was in Lonnie's
hand at the time of the first shot.

 After the gun discharged, appellant claims that Lonnie started screaming he was
"dying." Appellant saw the blood on Lonnie's forearm and told Lonnie that he was only bleeding. 
According to the statement, they continued wrestling and ended up some ten feet away from the
recliner, on the floor in the hallway. By this time, appellant had taken the gun away from Lonnie. 
As appellant described the second shot in the statement, Lonnie, though wounded and on the
floor, kept reaching up and trying to grab the gun out of appellant's hand; appellant then pulled
the trigger, not knowing where the bullet would hit.

 Appellant stated that he had been afraid to walk out of the house while they were
arguing, fearing Lonnie was so angry he would shoot appellant in the back; appellant thought
Lonnie had "lost it." Further, appellant denied any intent to kill or injure his brother, claiming
he would not have done so if the gun had not been brought out; "[I] was afraid but did not intend
to kill him."



Appellant's Testimony at Trial


 Appellant's testimony at trial gave a slightly different version of events and of his
actions, intentions, and state of mind. Appellant testified that after the argument, Lonnie sat back
down in the recliner with the gun in his hand, cocked the gun, pointed it at appellant, and told
him, "This is how I am going to handle this, I am going to shoot you." Appellant testified that
he told Lonnie to put the gun away because one of them would get hurt. Next, appellant testified
that he looked into Lonnie's eyes and could see the hate, could see that Lonnie would shoot him
if he ran. Appellant claimed he was hurt and upset by suddenly discovering that Lonnie hated
him. Appellant testified that he threw his cane at Lonnie; jumped up on the recliner and tried to
take the gun away; and, while appellant held Lonnie's elbow, trying to twist the gun away, it went
off.

 Appellant testified that, after the gunshot, he tried to help Lonnie into the bathroom
to clean the blood off his arm, but Lonnie turned to him suddenly and said, "You shot me," to
which appellant responded, "No, but if you keep messing around, I'll kill you." Appellant
testified that Lonnie reached up for the gun now in appellant's hand, grabbed the hand, and started
fighting with appellant. During this fight, appellant claimed that Lonnie collapsed to the floor
pulling appellant with him, and that was when the gun discharged, fatally wounding Lonnie. 

 Appellant testified that he did not remember cocking the gun, although the gun
wouldn not fire unless cocked. He further testified that he did not intend to pull the trigger, did
not want to kill his half-brother, and was trying to catch Lonnie as he fell so that Lonnie would
not hit his head on a near-by table. Appellant testified that he did not recall if he aimed the gun
at his half-brother. According to appellant, Lonnie had hold of his hand; appellant was trying to
catch Lonnie as he fell and was holding the gun at the same time, and it was very confusing.

 Concerning his mental state at the time, appellant testified:



My mind was like a kaleidoscope. Everything was just jumbled together. I knew
he was hurt. I was concerned about that. I was -- I was -- I was scared. I was
hurt. I could -- I had saw the hate in his eyes and I knew all of a sudden that he
really didn't care for me the way I thought he did. I mean all of these things were
just going through my mind that, you know, it -- it was just racing through, you
know, and the one thought paramount in my mind is how damn stupid this is, how
stupid, how stupid, how stupid. . . . -- I just -- it was just -- it just kept crashing
in my mind this, you know."



This was the only testimony at trial as to the appellant's mental state during the shooting.



DISCUSSION



 Based on the evidence adduced at trial, the State requested a charge on murder.
Defense counsel requested instructions on self-defense/accident and a charge on the lesser included
offenses of voluntary manslaughter, involuntary manslaughter, and criminally negligent homicide. 
The trial court submitted a charge on murder and included an instruction on self-defense. However, the court denied the defense request for an instruction on accident (1) and
refused to submit any lesser included offense. The appellant has preserved by his two points of
error the failure of the trial court to submit voluntary or involuntary manslaughter in the court's
charge. Appellant has not preserved by point of error the failure of the trial court to submit a
charge on criminally negligent homicide.



Standard of Review


 A charge on a lesser included offense must be submitted if two requirements are
met: first, the lesser included offense must be included within the proof necessary to establish the
offense charged; and second, there must be some evidence in the record that if the defendant is
guilty, he is guilty of only the lesser offense. Saunders v. State, No. 69-90 (Tex. Crim. App.,
May 13, 1992); Royster v. State, 622 S.W.2d 442, 444 (Tex. Crim. App. 1981) (opinion on
reh'g).

 Voluntary and involuntary manslaughter are both lesser included offenses of
murder, (2) so the only question presented in this case is whether this record contains evidence that
appellant is guilty of only manslaughter, be it voluntary or involuntary.

 It is well established that if evidence from any source raises the issue of a lesser
included offense, a charge on that offense must be included in the court's charge. Ojeda v. State,
712 S.W.2d 742, 744 (Tex. Crim. App. 1986). A defendant's own testimony is sufficient to raise
the issue of a lesser included offense. Hunter v. State, 647 S.W.2d 657, 658 (Tex. Crim. App.
1983). The credibility of the evidence and whether it conflicts with other evidence must not be
considered in deciding whether the charge on the lesser offense should be given. Thompson v.
State, 521 S.W.2d 621, 624 (Tex. Crim. App. 1974). Thus, regardless of the strength or
weakness of the evidence, if any evidence raises the issue that the defendant was guilty of only
the lesser offense, then the charge must be given. Moore v. State, 574 S.W.2d 122, 124 (Tex.
Crim. App. 1978).



Charge on Voluntary Manslaughter


 Texas Penal Code, section 19.04, provides in pertinent part:



(a) A person commits [voluntary manslaughter] if he causes the death of an
individual under circumstances that would constitute murder under Section
19.02 of this code, except that he caused the death under the immediate
influence of sudden passion arising from an adequate cause.


(b) "Sudden passion" means passion directly caused by and arising out of
provocation by the individual killed or another acting with the person killed
which passion arises at the time of the offense and is not solely the result of
former provocation.


(c) "Adequate cause" means cause that would commonly produce a degree of
anger, rage, resentment, or terror in a person of ordinary temper, sufficient
to render the mind incapable of cool reflection.



Under the statute, voluntary manslaughter requires that the evidence meet all the elements
necessary for murder, including intentionally and knowingly causing death, but differs from
murder in that the defendant must be acting under the immediate influence of sudden passion
arising from an adequate cause.

 Appellant argues that sufficient evidence exists in this case from which the jury
could find him guilty only of voluntary manslaughter. We disagree for two reasons: first, the
evidence at trial does not establish that appellant meets the criteria of causing the victim's death
"while under the immediate influence of sudden passion"; and second, appellant's affirmative
testimony does not establish the requisite "intent" for voluntary manslaughter.

 We conclude that the evidence in this record does not support the assertion by
appellant that he fired the fatal shot at a time when he was acting under the immediate influence
of sudden passion arising from adequate cause. Appellant relies heavily on the fact that he acted
out of "fear" regarding the deceased. At trial appellant testified that, when his half-brother
Lonnie Epperson cocked and pointed the gun at him, he could see the "hate" and "loathing" in
Lonnie's eyes. Appellant testified that he was "scared" and "hurt" and he believed "if I turned,
tried to run out the front door he was going to kill me, this man that I loved."

 Appellant concedes that fear alone is not enough to raise the existence of "sudden
passion" unless the defendant's mind is rendered incapable of cool reflection. Gonzales v. State,
717 S.W.2d 355, 357 (Tex. Crim. App. 1986). Further, the level of fear that is required will not
be inferred but must be demonstrated by evidence in the record. Id. Here, the evidence is
undisputed that following the struggle and firing of the non-fatal shot, appellant had taken the gun
away from the deceased. The evidence indicated that appellant was larger and heavier than the
deceased, who was disabled by the first gunshot wound. Further, appellant testified he was
calmly helping Lonnie to the bathroom to clean off what appeared to be a superficial wound. 
Thus, before firing the fatal shot, the evidence demonstrates that appellant no longer had reason
to fear his brother, appeared capable of cool reflection, and was in control of his emotions. 
Appellant relies on his testimony that his mind was like a "kaleidoscope" and "everything was just
jumbled together." However, placing this testimony in context it appears that the mental state
described in appellant's testimony occurred after the fatal shot, not before. We do not find in this
record sufficient evidence to raise the issue of sudden passion, a necessary element of voluntary
manslaughter. 

 Additionally, appellant's testimony at trial affirmatively denied any intent on his
part either to shoot or to kill the victim, Lonnie Epperson. Appellant testified that the first shot
occurred during a struggle when the gun was in Lonnie's hand. Regarding the second, fatal shot,
appellant indicated that it occurred while he was helping Lonnie to the bathroom to administer
first aid to what appellant thought was a flesh wound. Appellant described how Lonnie's legs
gave way and the victim grabbed for the gun. Appellant testified that he did not remember
cocking the gun, although "I must have cocked the gun" because the gun could not be fired
otherwise. Although appellant admitted pulling the trigger when Lonnie grabbed for his hand,
he could not remember at trial whether or not the gun was pointed at the victim and testified that
he had no idea where the second bullet would hit. Regarding the specific issue of motive and
intent, appellant unequivocally testified:



Q. Was it your intention to shoot him?


A. No.


Q. Was it your intention to pull the trigger?


A. No.



 When the entire record is viewed as a whole, it is clear that appellant's defense was
self-defense and/or accident only and that evidence of intent as to the lesser included offense of
voluntary manslaughter is not present in this record. Thus, the trial court correctly refused to
submit voluntary manslaughter because the evidence did not satisfy the "guilty-only" test. See
Royster, 622 S.W.2d at 444. Since the trial court correctly refused to submit an instruction on
voluntary manslaughter, appellant's first point of error is overruled.



Charge on Involuntary Manslaughter

 An involuntary manslaughter instruction is proper when there is evidence that the
defendant "recklessly" caused the death of another. Tex. Penal Code Ann. § 19.05(a) (1986).

 


A person acts recklessly, or is reckless, with respect to circumstances surrounding
his conduct or the result of his conduct when he is aware of but consciously
disregards a substantial and unjustifiable risk that the circumstances exist or the
result will occur. The risk must be of such a nature and degree that its disregard
constitutes a gross deviation from the standard of care that an ordinary person
would exercise under all the circumstances as viewed from the actor's standpoint.



Tex. Penal Code. Ann. § 6.03(c) (1989).

 A complete review of the evidence in the record fails to raise an inference that the
appellant was "aware of" and "consciously disregarded" a substantial and unjustifiable risk. The
appellant testified that the first shot resulted from a struggle when the deceased had sole
possession of the gun. Appellant denied any memory of cocking the pistol before the fatal shot,
denied intentionally discharging the gun, and claimed firing the gun was an accident. Appellant's
trial testimony affirmatively negates awareness and conscious disregard for the risk of shooting
the deceased. An instruction on the lesser included offense of involuntary manslaughter was
properly refused by the trial court. Accordingly, appellant's second point of error is overruled.



CONCLUSION


 Having reviewed the entire record and finding no error in the court's charge, we
affirm the judgment of conviction of the district court.



 

 Mack Kidd, Justice

[Before Justices Powers, Jones and Kidd]

Affirmed

Filed: August 26, 1992

[Do Not Publish]

1.   Under the 1974 Penal Code, "accident" is no longer a defense; the trial court did not
err when it refused to charge on that issue as such. See George v. State, 681 S.W.2d 43,
45 (Tex. Crim. App. 1984); Williams v. State, 630 S.W.2d 640, 644 (Tex. Crim. App. 1982). 
An instruction on "voluntariness" now serves the same function as the former instruction on
"accident." Joiner v. State, 727 S.W.2d 534, 535 (Tex. Crim. App. 1987); Williams, 630
S.W.2d at 644; Graf v. State, 807 S.W.2d 762, 767 (Tex. App. 1990, pet. ref'd); see Tex.
Penal Code Ann. § 6.01(a) (Supp. 1992) ("A person commits an offense only if he voluntarily
engages in conduct, including an act, an omission, or possession.").
2.   See Havard v. State, 800 S.W.2d 195, 216 (Tex. Crim. App. 1989) (on motion for
rehearing) (holding that voluntary manslaughter was a lesser included offense of murder);
Lugo v. State, 667 S.W.2d 144, 147 (Tex. Crim. App. 1984) (holding that involuntary
manslaughter is a lesser included offense of murder).