**Opinion filed June 15, 2023**



# In The

# Eleventh Court of Appeals

_____

## No. 11-21-00251-CR

_____

## ZADAN LOGAN HAYES, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**
**Midland County, Texas**
**Trial Court Cause No. CR54942**

## M E M O R A N D U M   O P I N I O N

This case involves the shooting death of a young man over a plastic sandwich baggie, half full, of marihuana. Appellant was charged by indictment with capital murder. Pursuant to a plea agreement, Appellant pleaded guilty to first-degree murder, a lesser-included offense. TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2019). Appellant elected to have a jury assess his punishment following his guilty plea. The jury assessed Appellant's punishment at 99 years in the Institutional

Division of the Texas Department of Criminal Justice, and the trial court sentenced Appellant consistent with the jury's verdict. PENAL §§ 12.32(a), 19.02(c).

Appellant asserts four issues on appeal. First, Appellant contends that the trial court erred by denying his trial counsel's request for a jury instruction on sudden passion. Second, Appellant states that the trial court abused its discretion when it admitted video recorded statements made by his codefendant to law enforcement over his Confrontation Clause objections. Third, Appellant states that the trial court erred in its assessment of court costs. Lastly, Appellant states that the trial court erroneously assessed attorney's fees against him, an indigent individual. Appellant asks us to reverse and remand the case for a new punishment trial and modify the bill of costs to delete any erroneous fees. We modify and affirm.

*Background*

Around midnight December 27, 2019, John Hayes (no relation to Appellant), Robert Duncan (the victim), and Carlos Lara drove to an intersection south of Interstate 20 in Midland County, Texas, to sell marihuana to Appellant and Larry West. Appellant brought a .40 caliber handgun to the drug deal and West brought a 9mm handgun.

As John Hayes drove up to the intersection, West, appearing alone, approached the passenger's side of the vehicle to speak with Duncan. West asked Duncan if he could see "the weed" before he purchased it, and Duncan complied. West then "snatched" the small bag of marihuana from Duncan and started running away from the vehicle. In response, Duncan exited the vehicle and started running after West. John Hayes turned off his vehicle to follow Duncan and heard several gunshots. Frantic, John Hayes immediately restarted his vehicle and drove away from the scene without Duncan.

West ran toward a nearby RV park where Appellant was also located. While running, West heard "a [gunshot] round go by him, like a 'pew' sound," then heard

2

two more gunshots. Appellant had fatally shot Duncan twice with the .40 caliber handgun—once in the head and once in the chest. Appellant then fled the scene.

Duncan was found dead in the RV park three days later. From the scene premises, law enforcement recovered three identical Winchester .40 caliber Smith & Wesson casings—two near Duncan's body and one "closer to the entrance" of the RV park. Law enforcement did not find any other shell casings at the scene.[1]

Contrary to other accounts of the incident, Appellant testified at trial that he and West entered John Hayes' vehicle as it pulled up to the intersection that night. Appellant testified that, once inside, Duncan asked, "where's the money," and in response Appellant told the driver to drive up "ahead." Appellant testified that he kept $400 under a house in the RV park, and he exited the vehicle to retrieve it. Appellant testified that, when he started walking back towards the vehicle, West "comes running [and] tells me to run." Appellant "heard shots fired" and ran toward the RVs behind him. On this point, Appellant clarified that he never saw anyone shooting and never saw anyone with a gun. However, Appellant testified that he had heard a total of three gunshots, including the two that he fired from his own .40 caliber handgun. Appellant testified that, while running, "I tripped over a pipe or something . . . and I fell, things fell out of my pocket," including "the gun, my phone, [and] my wallet." Appellant testified that, "I seen a glimpse of a person, so I aimed, just scared, and I pulled the trigger . . . . [j]ust started shooting." Appellant explained that he "never [saw]" Duncan, rather, that he had "just seen a shadow." Appellant confirmed that he shot twice, striking Duncan once in the head and once in the chest, and that he then fled the scene.

---

[1]Law enforcement recovered a magazine with "live" 9mm rounds in it, however, no 9mm casings were found at the scene or in the surrounding area. West stated that he lost this 9mm magazine "when running from" Duncan, and Appellant confirmed that he did not see West or anyone else shooting that night.

*Discussion*

I. *Issue One: Sudden Passion*

In his first issue, Appellant asserts that the trial court erred by failing to provide an instruction on sudden passion, a mitigating circumstance that reduces a first-degree murder offense to a second-degree murder if the issue is raised and proved by the defendant. PENAL § 19.02(d); *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005). Appellant contends that the harm suffered by Appellant "is apparent in this case based upon the sentence imposed by the jury" since the maximum prison time would have been twenty years for a second-degree murder. PENAL §§ 12.33(a); 19.02(d). The State responds that the trial court did not err in denying Appellant's request because the "evidence presented at the punishment hearing did not support an instruction on sudden passion."

A. *Standard of Review*

The Penal Code defines "sudden passion" as "passion directly caused by and arising out of provocation by the individual killed . . . [that] arises at the time of the offense and is not solely the result of former provocation." PENAL § 19.02(a)(2). The Penal Code defines "adequate cause" as "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." PENAL § 19.02(a)(1).

The Court of Criminal Appeals directs that, "before a defendant is allowed a jury instruction on sudden passion, he must prove" the following:

(1) An adequate provocation by the victim occurred;

(2) a passion or emotion, such as terror or rage, existed;

(3) the murder occurred while such a passion still existed;

(4) the murder occurred "before there was a reasonable opportunity for the passion to cool"; and

4

(5) "a causal connection [existed] between the [victim's] provocation, the [defendant's] passion, and the homicide."

*McKinney*, 179 S.W.3d at 569. A sudden passion instruction is warranted in the punishment phase if "it is raised by the evidence, even if that evidence is weak, impeached, contradicted, or unbelievable." *Id.* (citing *Trevino v. State*, 100 S.W.3d 232, 238 (Tex. Crim. App. 2003). "However, the evidence cannot be so weak, contested, or incredible that it could not support such a finding by a rational jury." *Id.*

We first determine whether the trial court erred in excluding the requested instruction, and if no error occurred, our analysis is complete. *Deere v. State*, 631 S.W.3d 762, 774 (Tex. App.—Eastland 2021, pet. ref'd) (citing *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012)). If there was an error, we determine whether the error was preserved. If the error was preserved, we will reverse if the trial court's error resulted in "some harm" to the defendant. *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). During our analysis, we focus on "the evidence supporting [the sudden passion] charge, not on the evidence refuting it." *Trevino*, 100 S.W.3d at 238–39. If no evidence exists in the record to support an instruction on sudden passion in the trial court's charge, the reviewing court should affirm the trial court's denial of such an instruction. *See McKinney*, 179 S.W.3d at 571.

B. *Analysis*

In order to determine whether the trial court erred, we must determine whether Appellant was entitled to an instruction on sudden passion. Accordingly, we examine whether there was evidence that met all of the *McKinney* factors: (1) adequate provocation by Duncan; (2) Appellant experienced a passion or emotion; (3) Appellant murdered Duncan while that passion or emotion still existed; (4) Appellant murdered Duncan "before there was a reasonable opportunity" for

5

Appellant's "passion to cool"; and (5) "a causal connection [that existed] between" Duncan's provocation, Appellant's passion, and the murder. *See McKinney*, 179 S.W.3d at 569; *Walker v. State*, 557 S.W.3d 678, 688 (Tex. App.—Texarkana 2018, pet. ref'd) ("The record must show some evidence of all of the elements of Section 19.02(d)" to raise sudden passion.). As stated above, we focus on "the evidence supporting [the] charge, not on the evidence refuting it." *Trevino*, 100 S.W.3d at 238–39.

According to Appellant's testimony, he wanted to buy some marihuana and asked West to "find some." West texted Duncan to facilitate the transaction. West brought a 9mm handgun and Appellant brought a .40 caliber handgun to the meeting. Appellant testified that, after he retrieved money for the drug transaction from underneath a house in the RV park, Appellant saw West running toward him, telling him to "run." Appellant testified that he heard a shot and that he ran. After that, Appellant stated that he ran behind a parked RV. While running, Appellant "tripped over a pipe or something," and when he started getting up, he turned and saw "a shadow." Although he never actually saw Duncan, Appellant then fired at and struck Duncan twice. Accordingly, Appellant had heard one shot, ran behind an RV, and, instead of continuing to disengage himself from the situation, Appellant killed Duncan by shooting him twice because he was afraid when he saw a shadow.

### 1. *No evidence of a high level of fear or terror*

While there is testimony by Appellant of fear, we search his testimony and find no emotion or descriptive testimony constituting terror, rage, anger, or resentment. "Evidence of fear alone, or self-defense, is not sufficient to raise sudden passion." *Walker*, 557 S.W.3d at 688; *see also Pham v. State*, 595 S.W.3d 769, 781 (Tex. App.—Houston [14th Dist.] 2019), *aff'd*, 639 S.W.3d 708 (Tex. Crim. App. 2022) ("Viewed in the light most favorable to appellant, his testimony establishes, at most, that he feared that the complainant would draw his pistol. However, 'a bare

claim of fear' does not establish 'sudden passion arising from adequate cause.'" (internal citations omitted)).

A "high level of terror or fear" is required before a defendant can meet the second *McKinney* factor (a passion or emotion such as terror existed). *McKinney*, 179 S.W.3d at 571; *see also Wooten*, 400 S.W.3d at 606–07 ("a bare claim of" fear will not necessarily support a claim of sudden passion, but that fear that "rises to the level of 'terror'" will suffice (if the cause is adequate) to invoke an instruction on the issue." (quoting *Daniels v. State*, 645 S.W.2d 459, 460 (Tex. Crim. App. 1983)); *Gonzales*, 717 S.W.2d at 357–58 ("appellant's claim that he was scared of the deceased was insufficient to raise the [sudden passion] issue"). The only casings found at the scene were .40 caliber, the same as Appellant's handgun; and identical to Appellant's Winchester .40 caliber Smith & Wesson rounds.

Appellant's testimony is without detail or description that might lead to a possible conclusion that Appellant experienced a high level of fear or terror. Appellant uses the word "scared" twice and "afraid" once, on a mere two pages of his trial testimony, but he clearly does not convey terror. Appellant testified as follows:

> Q. So you're there. You trip. You fall. You're getting up, what happens?
>
> A. I seen a glimpse of a person, and I was scared because I heard shots, so I shot with my gun.
>
> Q. How did you do it? You described it to me very visually.
>
> A. I was on the ground, and I was getting up, and I turned and I seen a glimpse of a person, so I aimed, just scared, and I pulled the trigger.
>
> . . . .
>
> Q. When you heard the gunshots, were you afraid?
>
> A. Yes, sir.

7

On the issue of imminent lethal harm, the only known guns were carried by Appellant and his accomplice, West. The casings found at the scene were consistent with having come from the gun of Appellant (a .40 caliber handgun) and the bullets within the magazine lost and left behind at the scene were consistent with having come from the gun of West (a 9mm handgun)—who Appellant had no reason to fear. Appellant testified that he did not know of any others having guns and that he never saw the sellers of the marihuana with guns. The only guns, bullets, and casings evidenced in the record were those of Appellant and West. Appellant testified as follows:

> Q. So you heard one shot prior to you shooting. That's what you've told the jury; is that right?
>
> A. Yes, sir.
>
> . . . .
>
> Q. So you heard one gunshot, and then you took off running, and then you turned around and shot at the very first person you saw, correct?
>
> A. I fell.
>
> Q. You shot at the first person you saw, didn't you?
>
> A: Yes.

Appellant's bare claim of fear is insufficient to entitle him to an instruction on sudden passion. *See Walker*, 557 S.W.3d at 688; *Pham*, 595 S.W.3d at 781; *see also Wooten*, 400 S.W.3d at 607.

### 2. *No evidence of sufficient provocation by Duncan*

Additionally, there is no evidence that Duncan provoked Appellant. *See McKinney*, 179 S.W.3d at 571 ("[E]vidence of provocation by the decedent is required for a sudden-passion charge."). It is undisputed that Duncan, without a firearm, ran after West after West stole marihuana from him. While doing so,

8

Duncan ran to the same RV park where Appellant was located. Within the RV park, *Appellant* was the one who had a loaded .40 caliber handgun on his person, and Appellant testified that he did not see anyone else shooting. *Cf. Moncivais v. State*, 425 S.W.3d 403, 409 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd) (jury's finding of no sudden passion supported by evidence that defendant's weapon was the only one seen or displayed during altercation); *see also McKinney*, 179 S.W.3d at 569 ("the evidence cannot be so weak, contested, or incredible that it could not support such a finding by a rational jury"). The medical examiner's autopsy report confirmed that Duncan was shot at a "distant range." Therefore, Duncan was not close to or otherwise physically threatening Appellant at the time of the murder. Even taking as true Appellant's testimony that he was afraid, Duncan did not act in a manner that "would commonly produce a degree of . . . terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." PENAL § 19.02(a); *McKinney*, 179 S.W.3d at 570. Duncan did not, verbally or otherwise, threaten or provoke Appellant when he ran into the RV park after West. Accordingly, Appellant did not submit any evidence to the trial court to meet this *McKinney* factor. *See McKinney*, 179 S.W.3d at 570–71. Proving this factor was essential for Appellant to be entitled to an instruction on sudden passion. *Id.* at 571.

### 3. *Appellant anticipated use of his handgun*

The fact that Appellant brought a .40 caliber handgun that night "for protection" weighs against a finding that the trial court erred in excluding the instruction. *See McKinney*, 179 S.W.3d at 570. Specifically, Appellant bringing a firearm to the drug transaction indicates that Appellant "prepar[ed] himself to respond to the altercation he was anticipating." *Id.*; *see also Gonzales v. State*, 717 S.W.2d 355, 357 (Tex. Crim. App. 1986) ("There is nothing in the record which indicates that appellant acted under the immediate influence of sudden passion. To the contrary, appellant anticipated the event and prepared himself to respond to the

9

occasion.") (quoting *Gonzales v. State*, 679 S.W.2d 638 (Tex. App.—San Antonio 1984) (Cantu, J., dissenting), *rev'd*, 717 S.W.2d at 358); *Walker*, 557 S.W.3d at 689 (defendant getting a loaded gun in anticipation of event weighed against a finding of sudden passion); *cf. Moncivais*, 425 S.W.3d at 408 ([T]he "[a]nticipation of and preparation for the fight constitutes some evidence that [the defendant] had time to deliberate regarding his actions."). Such evidence indicates that Appellant anticipated an altercation and deliberately prepared himself for the altercation, rather than Appellant's mind being rendered "incapable of cool reflection." PENAL § 19.02(a)(1); *McKinney*, 179 S.W.3d at 570.

4. *A jury argument encompassing sudden passion was made*

Finally, we note that trial counsel argued sudden passion as "our explanation of self-defense." Even though the trial court denied trial counsel's request for an instruction thereon, trial counsel implied sudden passion during his closing statements. In appealing to the jury for a twenty-year sentence, trial counsel argued:

> I would submit to you, based on everything you heard -- and you get to take into account our issue, our explanation of self-defense, imperfect as it is, you get to consider that. You get to consider [Duncan], his friends, and what did they do. Now, I'm not here to say it was all [Duncan's] fault, but I think he had fault in it.

The trial court did not err when it denied trial counsel's request for a sudden passion instruction. The jury heard all of the evidence that Appellant claims would have supported the instruction, which if heeded, could have reduced the maximum sentence to twenty years. Yet, when the jury was permitted to assess a punishment of as few as five years on the charge before them, significantly, they did not merely assess twenty years as they could have even without the instruction. Instead, the jury assessed Appellant's punishment at ninety-nine years. While this fact does not enter into our analysis of whether Appellant was entitled to a sudden passion instruction, the jury's punishment verdict is some evidence that the jury did not accept

10

Appellant's "explanation of self-defense" or the casting of those events as adequate cause, meriting a lesser punishment.

Considering the foregoing, we conclude that there is no evidence in the record to support an instruction on sudden passion in the trial court's charge. *See McKinney*, 179 S.W.3d at 571. Without evidence that "sudden passion" existed and without evidence of an "adequate cause," as defined by the Penal Code, Appellant cannot show that he was entitled to such an instruction. PENAL § 19.02(a), (d); *McKinney*, 179 S.W.3d at 569, 571; *see also Walker*, 557 S.W.3d at 688. Accordingly, we cannot say that the trial court erred when it denied trial counsel's request for a sudden passion instruction. We overrule Appellant's first issue.

II. *Issue Two: The Admission of the Codefendant's Testimonial Statement*

In his second issue, Appellant asserts that the trial court abused its discretion when it admitted, over Appellant's Confrontation Clause objections, excerpts of a recorded statement made by Appellant's codefendant during a police interrogation. The State concedes error on this issue but asserts that the error was harmless. After careful review of the record, we conclude that the trial court did commit error, but we are satisfied beyond a reasonable doubt that the error was harmless. *See* TEX. R. APP. P. 44.2(a).

A. *Standard of Review*

The Sixth Amendment provides an accused with the right "to be confronted with the witnesses against him." U.S. CONST. amend. VI. In this regard, when a witness makes an out-of-court "testimonial" statement against the accused, such a statement is inadmissible unless (1) the declarant is unavailable, and (2) the accused has had a prior opportunity to cross examine the declarant. *See Crawford v. Washington*, 541 U.S. 36, 68 (2004); *De La Paz v. State*, 273 S.W.3d 671, 680 (Tex. Crim. App. 2008). We review de novo a trial court's ruling on a constitutional issue.

11

*See Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010) (Confrontation Clause issue); *Wall v. State*, 184 S.W.3d 730, 742 (Tex. Crim. App. 2006) (same).

A finding of Confrontation Clause error requires the reviewing court to undertake a constitutional harm analysis. *See* TEX. R. APP. P. 44.2(a); *Langham*, 305 S.W.3d at 582. During this analysis we consider the *Scott* factors—a non-exclusive list of relevant considerations: such as (1) the importance of the statement to the State's case, (2) whether the statement was cumulative of other evidence admitted by the trial court, (3) "the presence or absence of evidence corroborating or contradicting the out-of-court statement on material points," and (4) the strength of the State's case. *See Langham*, 305 S.W.3d at 582 (quoting *Scott v. State*, 227 S.W.3d 670, 690 (Tex. Crim. App. 2007); *Davis v. State*, 203 S.W.3d 845, 850 (Tex. Crim. App. 2006) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). We may also consider the nature of the error, whether the State emphasized the error, and "how weighty the jury may have found the erroneously admitted evidence to be compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant." *Scott*, 227 S.W.3d at 690. Following our review, we must be "satisfied, to a level of confidence beyond a reasonable doubt" that the error did not contribute to Appellant's punishment. *Langham*, 305 S.W.3d at 582 (quoting *Scott*, 227 S.W. 3d at 691); *see* TEX. R. APP. P. 44.2(a); *see also Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007).

B. *Analysis*

1. *The trial court's admission of West's recorded statements (State's Exhibit No. 55)*

At trial, the State offered excerpts of a videotaped statement made by Appellant's codefendant, Larry West, to law enforcement as a statement against interest. *See* TEX. R. EVID. 803(24). Trial counsel for Appellant objected based on *Crawford*, stating that he did not have the opportunity to cross-examine West

12

regarding the statement. *See Crawford*, 541 U.S. at 68. The State responded that the statement did not violate the Confrontation Clause because the statements in the exhibit were restricted to West's own actions. As to West's unavailability to testify, the State indicated that "[West] obviously has a Fifth Amendment right, and he is currently charged with capital murder and is pending trial on that charge, and so there is no way to compel [West] to come and testify." *See* TEX. R. EVID. 804(a). The trial court overruled trial counsel's objections and admitted the recorded statement as State's Exhibit No. 55.

The exhibit is one minute and eleven seconds in duration and depicts West admitting that he himself planned to "snatch" the marihuana and run during the drug transaction. In the statement, West describes his own actions as he made contact with Duncan on the passenger's side of the vehicle on the night of the incident. Specifically, West states that he only had $10, so he planned to "snatch [the marihuana] and run, which I did actually"[2] West states that when he made contact with Duncan on the passenger's side of the vehicle, he asked Duncan if he could see and smell the marihuana to "see if it's like real or whatever." West stated: "I smelled it, and I was like, oh yeah, that's grass. Then [Duncan] put it down and he looked down, and I just snatched it, and I ran." West then stated: "I knew I had no money and I knew *he* [ostensibly Appellant] had no money, so like, I just was like, just take it and run." The statement then ends with West admitting: "I set somebody up [and] took his weed . . . ."

On appeal, Appellant asserts that the trial court's admission of State's Exhibit No. 55 violated the Confrontation Clause because West's statements within the exhibit were testimonial, the State did not prove that West was unavailable to testify, and trial counsel did not have a prior opportunity to cross-examine West. Appellant

---

[2]Investigator Wilson clarified that, when West said "it," he was referring to marihuana.

13

does not brief whether the trial court's error harmed Appellant. The State concedes error but asserts that the error was harmless beyond a reasonable doubt.

2.  *The admission of State's Exhibit No. 55 did violate Appellant's rights under the Confrontation Clause*

We conclude that the trial court erred when it admitted State's Exhibit No. 55 into evidence over trial counsel's Confrontation Clause objections. West's statements were made during a police interrogation and related to his actions on the night of the murder. Accordingly, West's statements were testimonial in nature. *See Crawford*, 541 U.S. at 53 n.4 (a "recorded statement, knowingly given in response to structured police questioning, qualifies under any conceivable definition" of "testimonial"); *Del Carmen Hernandez v. State*, 273 S.W.3d 685, 687 (Tex. Crim. App. 2008) (A codefendant's custodial interrogation is testimonial for purposes of the Sixth Amendment and *Crawford*). In addition, even if West was unavailable to testify for purposes of Rule 804(a)(1), trial counsel did not have a prior opportunity to cross-examine West regarding his statements. *See Crawford*, 541 U.S. at 68. As a result, the trial court's admission of State's Exhibit No. 55 violated Appellant's rights under the Confrontation Clause. *See id.*

3.  *The trial court's error was harmless beyond a reasonable doubt*

We next consider whether the trial court's constitutional error was harmless beyond a reasonable doubt, considering the *Scott* factors: the importance of the statement to the State's case, whether the statement was cumulative of other evidence, whether the statement's material points are corroborated or contradicted, and the strength of the State's case. *See Langham*, 305 S.W.3d at 582. Here, we also consider the nature of the error, whether the State emphasized the error, and "how weighty the jury may have found the erroneously admitted evidence to be

14

compared to the balance of the evidence with respect to the element or defensive issue to which it is relevant." *See id.*

> a. *West's statements and the relevant evidence admitted at trial*

West's statements in State's Exhibit No. 55 pertain to West making contact with Duncan and stealing the marihuana from him on the night of the murder. West's statements are corroborated in significant detail by the testimony of the driver, John Hayes. John Hayes testified that he and Duncan were "going to sell weed" that night to a "guy" he had seen at school that matched West's description. John Hayes testified that a lone person approached Duncan at the passenger's side door and asked Duncan if he could see the marihuana. John Hayes testified that "the one guy [he] had seen walked up and he wanted to see the stuff. Well, Robbie showed him, and then he reached in and grabbed it and ran off." John Hayes testified that, prior to West snatching the marihuana, the bag was "in [Duncan's] lap in his hand." Appellant corroborated John Hayes's testimony that a drug transaction was to occur and that he saw West running.

The recorded statements also convey that the plan to snatch the marihuana and run was concocted by West. On this point, West's statements restrict to himself the decision making and actions taken confessing: "I was going to snatch it and run, which I did actually," and "I set somebody up." West further stated: "I knew I had no money, and I knew he had no money, so like, I just was like, just take it and run." West did not make any statements regarding Appellant's actions or indicate that Appellant had any preview of West's plan to grab and run rather than pay for the goods. The admission of the statement into evidence actually provided support to Appellant's argument that he had stumbled into the drug deal gone bad. In Appellant's police interview, Appellant stated that West's intentions were to rob Duncan, however, Appellant states that, at the time, "I thought we were just getting

15

some weed, so I was going to-fixin' to buy some"—denying knowledge that West was going to rob Duncan that night. On cross-examination, Appellant denied "enter[ing] [into] an agreement" with West "to rob Robert or his friends from the marijuana." Appellant's trial counsel conducted a voir dire examination of Investigator Wilson regarding whether she knew who West was referring to when he stated: "I knew *he* had no money." Investigator Wilson stated multiple times that she did not have personal knowledge regarding which person West was referring to in that particular statement. Appellant's trial counsel then asked Investigator Wilson to speculate as to who West was referring to, and she stated that she "would assume it was" Appellant. Within the presence of the jury, however, apparently neither party thought it necessary to question Investigator Wilson regarding who she believed West was referring to when he said: "I knew he had no money."

### b. *The Scott factors*

After thorough review, we conclude that the *Scott* factors weigh against a finding of harm. *See Langham*, 305 S.W.3d at 582 (quoting *Scott*, 227 S.W.3d at 690–91). Accordingly, we are satisfied beyond a reasonable doubt that the trial court's constitutional error did not contribute to Appellant's punishment. *See Clay*, 240 S.W.3d at 904.

> ### i. *In light of Appellant's guilty plea, the impact at trial of West's statements was diminished*

First, we conclude that West's statements on State's Exhibit No. 55 were not particularly important to the State's case. They did not include testimony of the shooting by Appellant or use of firearms by West or others. On this issue, it is significant that Appellant pleaded guilty to the offense. Appellant admitted in front of the jury that he intentionally killed Duncan, and the elements of murder were met. The State additionally presented the testimony of ten witnesses and admitted sixty-nine exhibits into evidence during the three-day trial. State's Exhibit No. 55 was

16

slightly over one minute in duration. The majority of West's statements in State's Exhibit No. 55 were about his own snatching of the marihuana from Duncan, which was undisputed therefore not a central issue in the State's punishment case.

We turn to whether West's statement that he "knew *he* had no money" was important to the State's case. As discussed above, Investigator Wilson was never asked, within the presence of the jury, to clarify who "he" referred to in this particular statement. As a result, the jury did not have any evidence that West was referring to Appellant. Even if the jury speculated that West was referring to Appellant, then, at most, the statement went to West's thoughts prior to the snatching and to West's intent, not to whether Appellant *actually* had money to pay for the marihuana that night. Under the circumstances, it is a minor issue. The vague, ambiguous statement had minimal probative value as presented. We conclude that West's statements in State's Exhibit No. 55 were not particularly important to the State's punishment case, and in fact were, on balance, favorable to Appellant.

### ii. *Cumulative of other evidence admitted*

Next, we conclude that West's statements were cumulative of other evidence at the punishment trial. As discussed above, the matters asserted in West's statements on State's Exhibit No. 55 were cumulative of evidence from John Hayes's testimony, Appellant's testimony, and Appellant's statement to law enforcement. Specifically, this cumulative evidence showed that (1) West intended to steal the marihuana from Duncan, (2) West made contact with Duncan, (3) West stole the marihuana from Duncan, and (4) West ran after stealing the marihuana. The material points at issue in West's statements were cumulative of this other evidence. *See Davis*, 203 S.W.3d at 853–56.

Similarly, we conclude that the material points in the statement were corroborated by other evidence, as the matters asserted within the statements were largely undisputed at the punishment trial. *See Langham*, 305 S.W.3d at 582. In

17

addition, as discussed above, we note that the statement that West "knew he had no money"—if indeed referring to Appellant—was neither corroborated nor contradicted by other evidence. There is no evidence, in State's Exhibit No. 55 or otherwise, that contradicts Appellant's statement that he *actually* had money to pay for the marihuana that night.[3] Likewise, there is no evidence, in State's Exhibit No. 55 or otherwise, that Appellant *himself* knew on the night of the incident that West intended to steal the marihuana. We conclude that the material points in the statement were corroborated by other evidence. We also conclude that the "material point" in the statement that West "knew he had no money" was neither corroborated nor contradicted by other evidence. Accordingly, this factor, on balance, weighs against a finding that the error contributed to Appellant's punishment.

> iii. *A strong punishment case presented by the State; harm minimized*

The State's punishment case against Appellant was strong. *See id.* We will describe the State's case at length not to state that the "jury verdict was supported by the evidence," but in an effort to fully consider "the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving" at their punishment verdict. *See Scott*, 227 S.W.3d at 690 ("[T]he question for the reviewing court is not whether the jury verdict was supported by the evidence. Instead, the question is the likelihood that the constitutional error was actually a contributing factor in the jury's deliberations in arriving at that verdict.").

The State presented numerous witnesses and exhibits for the jury to assess the appropriate punishment for Appellant. The State presented evidence that Appellant brought a loaded .40 caliber handgun to the meeting place of a drug transaction. The evidence showed that Appellant was thus prepared to fire and injure or kill another

---

[3]Deputy Strahan testified that he did not remember if Appellant had "any cash on him" when he was arrested several days later, because he did not transport Appellant. This fact does not pertain to whether Appellant had money on the night of the murder.

person during the drug deal. The evidence showed that Appellant did not attempt to assist Duncan after shooting him, neither checking if Duncan had been shot nor calling for emergency assistance. The State presented evidence that Appellant fled the scene and did not tell law enforcement about Duncan until after Appellant's arrest and after law enforcement found the murder weapon half-buried in a friend's backyard.

The State additionally presented evidence of Appellant's demeanor and public-facing persona a month prior to the murder, and testimony regarding John Hayes's fear of Appellant. The State introduced, and the trial court admitted, photographic evidence from Appellant's Instagram page depicting Appellant pointing two firearms, one appearing to have an extended magazine, toward the camera with a stern expression on his face. Underneath the photograph, a large amount of money is seen on Appellant's previous social media post. In addition, John Hayes testified that he was anxious about testifying because he "kn[e]w [Appellant] could have his family come after [him] or [his] family because of this and that worrie[d] [him]."

The State presented evidence of Appellant's prior dealings with the criminal justice system. The State presented, and the trial court admitted, evidence that Appellant (1) while a juvenile, received deferred adjudication probation for theft of a firearm in 2017, violated such probation, and received an extension of his delinquent probation until his eighteenth birthday, (2) was convicted of possession of marijuana in 2020, and (3) at the time of the murder was on deferred adjudication for unauthorized use of a motor vehicle.

The State's case also included emotional and impactful evidence from Duncan's mother, sister, and grandfather regarding the tragic loss of Duncan, their son, brother, and grandson. The State presented evidence of Duncan's short but

joyous life and the impact that his absence has had on his family and the community. We conclude that the State's punishment case was strong.

> iv. *The three permissive factors weigh against harm*

Next, we consider the three permissive factors put forth by *Scott*. *See Langham*, 305 S.W.3d at 582 (the reviewing court may consider the source and nature of the error, whether the State emphasized the error, and how weighty the jury would find the evidence on balance). First, the source and nature of the evidence was a brief, one-minute redacted video of West's statements regarding his own actions. Second, the State did not mention West's statements in State's Exhibit No. 55 or repeat his rendition of the events, nor did the State reiterate West's plan to steal from Duncan or West's actions that night. Instead, in closing arguments, the State emphasized Appellant's actions on the night of the murder. The State asserted that Appellant "didn't premeditate the death of Robert Duncan. But what he did do was bring this gun out to that weed deal." The State further emphasized that Appellant "went in there to buy weed, [and] he had that gun." Third, in light of all the discussed factors herein, the jury likely did not find the one-minute erroneously admitted and cumulative statement "weighty" as "compared to the balance" of the other evidence presented at Appellant's punishment trial. We conclude that the three permissive factors also weigh against a finding that the trial court's error contributed to Appellant's punishment. *See id.*

> c. *Beyond a reasonable doubt, the trial court's error did not contribute to Appellant's punishment*

After carefully reviewing the foregoing considerations, we conclude there is little to no "likelihood that the [trial court's] constitutional error was actually a contributing factor in the jury's deliberations in arriving" at their verdict. *Id.* As a result, we are satisfied beyond a reasonable doubt that the trial court's error in admitting State's Exhibit No. 55 did not contribute to Appellant's punishment. *See*

20

*Scott*, 227 S.W.3d at 690–91; *Clay*, 240 S.W.3d at 905–06 ("The erroneously admitted evidence established little, if anything, negative about appellant that was not also well established by the properly admitted evidence."). We therefore overrule Appellant's second issue.

III. *Issues Three and Four: Assessing Court Costs and Court-Appointed Attorney's Fees*

In his third and fourth issues, Appellant states that the trial court erred in its assessment of court costs and court-appointed attorney's fees against Appellant. The State concedes both points. We conclude that the trial court erred in its assessment of court-appointed attorney's fees, however we hold that the assessment of court costs was proper. We therefore modify the trial court's judgment and the district clerk's third amended bill of costs to remove the court-appointed attorney's fees.

A. *Applicable Law*

We review an assessment of court costs to determine if there is a basis for the cost, not to determine if there was sufficient evidence offered at trial to prove each cost. *Smith v. State*, 631 S.W.3d 484, 500–01 (Tex. App.—Eastland 2021, no pet.) (citing *Johnson v. State*, 423 S.W.3d 385, 389 (Tex. Crim. App. 2014)). "An appellant may generally challenge the imposition of even mandatory court costs for the first time on direct appeal when those costs are not imposed in open court and the judgment does not contain an itemization of the imposed court costs." *London v. State*, 490 S.W.3d 503, 507 (Tex. Crim. App. 2016) (citing *Johnson*, 423 S.W.3d at 390–91).

An indigent defendant cannot be taxed the cost of his court-appointed attorney unless the trial court finds that the defendant has the financial resources to repay those costs in whole or in part. *Id.* at 501 (citing *Mayer v. State*, 309 S.W.3d 552, 556 (Tex. Crim. App. 2010)); *see* TEX. CODE CRIM. PROC. ANN. art. 26.05(g) (West Supp. 2022). A defendant's financial resources and ability to pay are explicit

elements that the trial court must consider in its determination of whether to order the reimbursement of such costs and fees. *Cates v. State*, 402 S.W.3d 250, 251 (Tex. Crim. App. 2013). A defendant who has been determined by the trial court to be indigent is presumed to remain indigent for the remainder of the proceedings in the case unless a material change in the defendant's financial resources is found to have occurred. CRIM. PROC. art. 26.04(p); *Cates*, 402 S.W.3d at 251.

B. *Analysis*

Here, the trial court assessed Appellant's state court costs at $185. These amounts for "[c]ourt costs apply to convictions on or after January 1, 2020, no matter the offense date." *See* TEX. GOV'T CODE § 51.608; District Clerk's Felony Conviction Court Cost Chart, https://www.txcourts.gov/media/1445512/district-clerks-felony-conviction-court-cost-chart.pdf; *see also* TEX. LOC. GOV'T CODE ANN. § 133.102 (West 2021). Appellant was convicted by the jury on October 27, 2021. Accordingly, the trial court did not err in its assessment of Appellant's court costs.

However, the trial court did commit error when it assessed court-appointed attorney's fees against Appellant, an indigent individual. The trial court found Appellant indigent during the proceedings and Appellant remained indigent at the time of this appeal. Initially, the trial court appointed trial counsel to represent Appellant throughout the proceedings because it determined that Appellant was indigent. In the judgment, the trial court ordered Appellant to pay "all costs in this proceeding incurred[,]" but it waived the court costs and any applicable fines because it found that Appellant "does not have the sufficient resources or income" to pay such costs. Moreover, the trial court ordered the district clerk to prepare the clerk's record for this appeal without cost to Appellant because the trial court had previously found him to be indigent. On November 15, 2021, the district clerk certified that Appellant could not afford the cost of a transcript of the clerk's record and confirmed that it would be provided at no cost to him. On April 11, 2022,

however, the district clerk assessed attorney's fees at $21,660.97 against Appellant its third amended bill of costs.

We hold that the court-appointed attorney's fees were improperly assessed against Appellant because there is nothing in the record to indicate that Appellant is no longer indigent—in fact, the trial court found, and the district clerk confirmed, that Appellant remained indigent while preparing this appeal. *See Cates*, 402 S.W.3d at 252; *Smith*, 631 S.W.3d at 501. Accordingly, we modify the trial court's judgment to clarify that "all costs" does not include court-appointed attorney's fees, and the district clerk's third amended bill of costs to delete the court-appointed attorney's fees assessed against Appellant.

*This Court's Ruling*

As modified, we affirm the judgment of the trial court.


W. BRUCE WILLIAMS
JUSTICE


June 15, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.